No. 24-2572

---

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

---

CHRISTOPHER GEORGE PABLE,

*Plaintiff-Appellant*

v.

CHICAGO TRANSIT AUTHORITY and CLEVER DEVICES, LTD.,

*Defendants-Appellees.*

---

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division, No. 1:19-v-07868.
The Honorable Robert W. Gettleman, Judge Presiding.

---

PETITION FOR REHEARING AND SUGGESTION
FOR REHEARING EN BANC OF
PLAINTIFF-APPELLANT CHRISTOPHER GEORGE PABLE

---

Christopher Pable

*Appellant*

U.S.C.A. — 7th Circuit
RECEIVED

OCT 0 9 2025

## TABLE OF CONTENTS

TABLE OF CONTENTS...........................................................................i

TABLE OF AUTHORITIES ....................................................................ii

INTRODUCTION .....................................................................................1

THE DISTRICT COURT FAILED TO PROPERLY EVALUATE APPLICABILITY

AND PROBATIVE VALUE .......................................................................3

THE DISTRICT COURT'S ANALYSIS RELIED ON ERRORS OF FACT AND

MISSTATEMENTS ..................................................................................9

THE DISTRICT COURT DIDN'T AFFORD FAIR TREATMENT AND ANALYSIS

................................................................................................................13

CONCLUSION........................................................................................17

CERTIFICATE OF COMPLIANCE........................................................18

CERTIFICATE OF SERVICE................................................................19

TABLE OF EXHIBITS ...........................................................................20

# TABLE OF AUTHORITIES

## CASES

Kendall-Jackson Winery v. Superior Court, 76 Cal.App.4th 970 (Cal. Ct. App. 1999) ........................................................................................ 7

McKennon v. Nashville Banner Pub. Co., 513 U.S. 352 (1995) ................................... 6

Nowata County Gas Co. v. Henry Oil Co., 269 F. 742 (1920) .................................... 12

Promier Products, Inc. v. Orion Capital, LLC ............................................................ 16

Salmeron v. Enterprise Recovery Systems, Inc., 579 F.3d 787 (7th Cir. 2009) ........................................................................................................... 15

Scheiber v. Dolby Laboratories, Inc., 293 F.3d 1014 (7th Cir. 2002)........................... 5

Trask-Morton, Marilyn v. Motel 6, No. 07-2417 (7th Cir. 2008)................................. 8

## CODES

Judicial Code of Conduct ........................................................................................ 16

## STATUTES

6 U.S.C. § 1142 - National Transit Systems Security Act (NTSSA)............................ 4

740 ILCS 14 - Illinois Biometric Information Protection Act (BIPA)................. 15, 18

## RULES

Federal Rules of Civil Procedure 13.......................................................................... 3

Federal Rules of Civil Procedure 30................................................................... 16, 17

Federal Rules of Civil Procedure 37.......................................................................... 9

Federal Rules of Civil Procedure 56......................................................................... 13

Federal Rules of Civil Procedure 60......................................................................... 18

Federal Rules of Evidence 105 ................................................................................... 8

Federal Rules of Evidence 401 ............................................................................... 3, 8

Federal Rules of Evidence 403 ............................................................................... 3, 8

INTRODUCTION

On July 28, 2025 a panel of this Court rendered an opinion on the sanctions and dismissal of this case from the district court. This Court's opinion revolved around a deferential standard of review. This petition hopes to outline issues in determining to use a deferential review. On August 4th, 2025 Timothy Duffy filed to withdraw as counsel and for an extension of time for plaintiff. These motions were granted on August 6th, 2025. As the record is voluminous and mature, securing new counsel wasn't possible and plaintiff-appellant will be proceeding pro se. The transition of materials from Mr. Duffy brought to light issues surrounding key deciding factors of the panel's opinion and the district court's conduct that plaintiff-appellant didn't previously have access to. It's respectfully requested for an en banc review for a question of exceptional importance, and the panel rehear this case.

The district court's declination to address applicability of both this Court and the Supreme Court's standing precedent has opened a question of exceptional importance: **"What is the applicability of the affirmative defenses of after acquired evidence and unclean hands in terms of public-policy based statutes?"** (See full context on page 5) This decision is of exceptional importance as it relates not only here, but to all public-policy whistleblowers' case structure. Specific protections are placed to try to help whistleblowers, because, by definition, those they seek relief from are also those whom have retaliated against them.

Issues in the evaluation of applicability and probative value of alleged spoliation resulted in an abuse of discretion. A reasonable person can look at the

1

claims on their face and determine clear error in the applicability based simply on the dates ranges at issue, and progression of the record. In doing so, conclusions surrounding lack of duty, limited to no applicability, and implausibility of malintent demonstrate unbounded and disproportionate rulings in assigning what the district court's itself refers to as "harsh" consequences.

Many of the "facts" presented and used in the district court's determinations, some of which have percolated through to this Court, are provably false or severe stretches of reality; creating a dangerous blend of fact and fiction that spins an insidious narrative. These statements have been manufactured or misrepresented by CTA and stated in their briefs without reference or backing. The statements were knowingly false, as the record doesn't support and, at times, actively contradicts them. CTA included these false statements in their briefs with intent for the court to rely on them. The court relied on these statements and then made ruling decisions based on them. This corrupted the judicial process itself.

This case is also extraordinary in its history and process. From unreasonable factual determinations to permitting violation of process, there's a pattern of harassment, bias and abuse of discretion in the proceedings. These issues run afront to the Rule of Law and the open, fair process it imparts. Additionally, this particular case's administrative history itself imparts issues that have affected this Court's opinion and standard of review.

## THE DISTRICT COURT FAILED TO PROPERLY EVALUATE APPLICABILITY AND PROBATIVE VALUE

In determining relevancy and probative value of evidence, FRE401 and FRE403 outline requirements to determine the eligibility on inclusion and their weight particularly, in terms of wasting time, confusing the issues, and prejudice these confused issues have imparted. In a whistleblower case such as this, the procedure and criteria are well defined. Consideration should fit within the bounds and scope of the claim. While certain defenses may shift this window, *these defenses need to be tied to the core of a claim by definition of them being a defense,* or be made into a separate/counterclaim as required by FRCP13(a). Even if these defenses somehow exceed that window, they should still remain applicable, non-duplicative, grounded in reality, and based on the record.

For a whistleblower claim to succeed, a plaintiff's burden is on demonstrating they performed a protected activity, then demonstrating it resulted in retaliation. Here, the claim states the protected activity was performed August 17th, 2018 and the first instance of retaliation occurred October 22, 2018 (R1 at 8, 14) [1]. This establishes a window with items in this case comprised of reporting a safety condition and a retaliatory action of suspension that fits under 6 U.S.C. § 1142 (b)(1)'s definitions.

---

[1] District docket references are preceded by "R".

The district court evaluated stated affirmative defenses as baselines in its decision. Performing the same analysis, CTA invoked the following: no hazardous safety or security condition; no protected activity; alleged protected activity wasn't a contributing factor in personnel action; same personnel action would have been taken in the absence of the protected activity; no punitive damages; and duty to mitigate (R8 at 27-28). From this list, there exists no defense that could benefit from any of the alleged spoliation.

The first two defenses revolve around administratively classifying the activity. The third and fourth defenses state the retaliation event was already going to occur. These defenses rely on information that CTA must produce to prove the October 22 event would have happened anyway, and be dated prior. Finally, defenses five and six are administrative. Defense five discusses claim eligibility under the tort immunity act and has no bearing on ESI at all. Defense six focuses on what was done to mitigate damages after retaliation, such as job searches and time to re-employment.

Clever Devices invoked the following affirmative defenses: claim exceeds the statute of limitations; not all administrative remedies were exhausted; failure to mitigate; the same action would have been taken in absence of the claim; Clever Devices didn't act with malice; reserve the right to make more defenses (R10 at 25-26). These defenses are primarily administrative and couldn't benefit from the alleged spoliated messages. The first two defenses are check-boxes where these facts can be evaluated. In fact, the second defense would *benefit* from lack of plaintiff

production. Defenses three and four are duplicative from CTA. Defenses five and six rely on solely on Clever Device's productions and actions.

CTA adds two additional affirmative defenses (R30) in conjunction with their counterclaim (R32). They assert the defenses of unclean hands and after-acquired evidence, which are described and aligned with the complaint alleged in their counterclaim. The counterclaim incorporated all of CTA's arguments it made inside of the doctrine of unclean hands.

The magistrate and district court both declined to address the precedents against the invocation of CTA's additional affirmative defenses, opening a question of applicability on public-policy statutes. Previously it was argued:

> *Nor is there any basis for the R&R's invocation of the doctrine of "unclean hands." Not only is that doctrine precluded by the specific standards articulated in the statute under which Mr. Pable's claim arises, it is not to be applied at all in the context of a legal claim for violation of a public-policy based statute protecting whistleblowers. See generally, Scheiber v. Dolby Laboratories, Inc., 293 F.3d 1014 (7th Cir. 2002). Similarly, there is no potential for the application of the "after-acquired evidence" doctrine, which is triggered in some employment cases where, as here, the statute includes a provision allowing a showing the employer would have acted the same regardless of the protected activity, as the Supreme Court has rejected the argument that the doctrine can be used to preclude recovery against*

5

*employers who violate public-policy based statutes. See generally, McKennon v. Nashville Banner Pub. Co., 513 U.S. 352 (1995).* (R166 at 13)

The strong precedents set by both this Court and the Supreme Court should have been considered. Additionally, only a small subset of issues in the affirmative defenses were relevant to this case. The district court created a chicken-and-egg paradox by using a potential issue from an affirmative defense that might not even be applicable, and yet declined to establish its inapplicability despite contrary existing precedents. Furthermore, "unclean hands" is an equitable defense, its application here is dubious. Even if these claims are valid, the relevance and probative value in the alleged spoliation led to a ruling that is disproportionately severe.

As outlined in the initial brief, the district court stated the alleged spoliation was relevant only to support CTA's CFAA claim under "unclean hands" and to impeach their own witness, Michael Haynes (A14); however, they also reasoned that Haynes' testimony was deemed credible (A57), paradoxically, dubbing him a mind-reader, and counter to impeachment.

It's uncontested the Skeleton Key was discovered August 17, 2018. Michael Haynes, plaintiff's supervisor, was emailed about the skeleton key that same day (R129-4 at 26). Following the email, a validation test was performed[2]; disclosure to

---

[2] CTA emphasizes knowing who performed the Dayton test as a crucial aspect of their spoliation claim. This distinction is irrelevant. It's uncontested that Michael Haynes, the plaintiff's supervisor, was notified via email. The statute focuses on the reporter's behavior

both Dayton RTA and Clever Devices was undertaken. Clever Devices then notified customers they'd remediated the issue (R129-4 at 36). On October 22, Haynes and plaintiff were placed on leave, the first asserted adverse personnel action (R139-21 at 5). Given this history and timeline, a theory of malice is hard to conceive. A bad actor would be severely limited in malicious activities they could perform in disclosing their only attack vector to their adversary, especially when the purpose of disclosure is remediation. A fantastical claim of malintent based on the established record is therefore highly improbable.

CTA's sole claim that would be disadvantaged is their dismissed CFAA claim. If permitted to continue enriching that issue in their affirmative defense, collateral estoppel would preclude pursuit, as the issue was dismissed via a well-argued (R120) judgement on the merits (R136). This issue at claim was also discovered after the fact, and CTA quickly realized it was able to access the machine anyway, via the key that was plugged into the computer at the time of confiscation (R129-1 at 28). Further, the issue is barred under the doctrine anyway as the actions at issue occurred years prior in 2016 (R129-1 at 29); the token precedent set by Kendall-Jackson Winery v. Superior Court establishes past unrelated misconduct before the discovery of the Skeleton Key doesn't qualify; misconduct must directly relate to the subject matter.

---

in reporting, not the supervisor's. The identity who performed *further* actions is immaterial, as Haynes isn't a named party in this litigation.

Finally, using the district court's own determined date of duty to preserve, October 29 2018, and knowing routine document destruction policies were in place for years prior (R129-7 at 29), this court has held in <u>Trask-Morton, Marilyn v. Motel 6</u> that such sanctions for spoliation are dependent on bad faith motives that include knowing the temporality of duty to preserve. A test could have been applied by simply looking at the dates; it's easy to see the entire chain of events falls before the district court's own determination of a date for duty to preserve.

By not taking the counterclaim's dismissal into account properly, the district court permitted evidence that is irrelevant, in violation of FRE401, and didn't act accordingly to rule FRE105 and FRE403. The evidence wasted time, confused the issues, and created irrelevant, unfair prejudice as a result. Additionally, the district court erroneously performed its evaluation on the wrong dates as awarded by the statute and failed to look at the applicability, feasibility, and probability of the legal theories outlined in the stated affirmative defenses. Thus, a reasonable person can see clear error the district court performed an improper calculus on relevance as well as probative value in relation to the issues at while also creating an entirely out of proportion remedy. This caused a disproportionate violation in FRCP37 (See 2015 committee notes) and judgement should be set aside.

## THE DISTRICT COURT'S ANALYSIS RELIED ON ERRORS OF FACT AND MISSTATEMENTS

The record demonstrates much of the lower court's, and this Court's, reasonings have a foundation that simply isn't true. As argued, CTA's claims have routinely been filled with misstatements they haven't been required to prove, forcing plaintiff into impossible situations of trying to prove multiple universal negatives. These errors have been reflected as basis for this court's decisions. A token, clearly wrong, example is their allegation of a 25gb vs 0.2gb image file (R80 at 7). This example is repeatedly cited and used as a foundation for sanctions and credibility; it's also false.

The statement in question originates from an affidavit by CTA's expert, who explicitly limits his expertise to a single software suite (R45-1 at 62), physically damaged plaintiff's phone, and actively altered its contents (R129-6). This "expert" defines various types of "images" (R45-1 at 62), a term CTA repeatedly exploited via ambiguity to misrepresent facts in this case. CTA also misled the magistrate about physical possibilities (R62 at 12), resulting in an order that, as objected to, and as noted by CTA itself as not knowing (R80 at 57), is impossible to fulfill and violates both the spirit of the magistrate's request and privilege protections. In palpable irony, CTA qualified plaintiff as an expert on these issues (R129 at 8), used plaintiff's definitions in their pleadings, and then attempted to pass off their production as compliant, all while shifting definitions of "image" to confuse the lower court. Upon reviewing the productions, it's clear that items should have been

removed but weren't, and some are impossible to remove to meet the order's requirements. Further, CTA's production[3] was only 0.18gb, which in reality was SMALLER than the purported corollary file they were comparing to (E2). CTA's entire justification in requesting another image was based solely on file-size, a claim the courts accepted without verification despite objection. These allegations are now being used as the basis for credibility determinations and sanctions, despite the evident manipulation of definitions and procedures by CTA. On record, CTA openly admits their team's clear lack of technical acumen, rendering them unqualified to make these claims; in the event they were made without malice, they were made in bad faith with intent to manipulate. *"[BABBIT]: And understand that I am the least technical person in the room, although Mr. Kennedy joined. So he may take the crown on that right now."* (R129-22 at 12)

A second major misstatement of facts again occurred when CTA made a false claim the lower court relied on and used to conclude an internally inconsistent statement. CTA contends in the affidavit filed (R139-1) there was an intentional configuration set to manipulate safety numbers and actions thereof. Nowhere is this stated, it states the *application is coded this way*; this representation is what is used to make a conclusion of an internally inconsistent statement. CTA's misrepresentation was accepted without scrutiny and formed the basis for these

---

[3] CTA's production seen in their own software's timeline (E2) also shows anomalous data indicative of tampering, which CTA has previously done in this case (13 at 8). Entries that predate the manufacturing of the imaged phone are present. Raised in deposition, CTA declined to investigate. (R129-7 at 6)

consequences. Anyone familiar with computer systems over the past few decades knows software evolution is highly dynamic. Developers change feature sets at will, such as integrating AI into search-engines and digital-assistants, or requiring multifactor-authentication. Web browsers, despite accessing the same content, exhibit varied vehicles (e.g., Chrome, Edge, Safari, Firefox), behaviors, and features, even when using the same engine (as with Chrome and Edge). Over time, these aspects change; defaults, configurations, and options are determined by the software provider, not individual users. During this petition's authoring, Signal, without user intervention, deployed out a new *default* key exchange called PQXDH, which could differ in forks (customized variants). The district court's conclusion of internal inconsistency runs counter to reality of how technology operates in the world.

As discussed, there exists thousands of forks of Signal alone (many of which come and go), with prominent examples actually showcased in the news surrounding the current executive administration. To this end, the lower court contends that an affidavit the Signal COO produced can answer questions relating to these thousands of variants in her brief statement. The lower court didn't even ask to see the narrow subpoena that CTA issued which the COO answered to explicitly, and tailored her responses to; instead, it shallowly determined that it was incredible the COO didn't speak to thousands of variants and her answer wasn't comprehensive (A66). This misrepresentation then percolated to this court and even the oral arguments. This further confused the issue; there are multiple

11

considerations for a successful X3DH key exchange (the underlying math of the safety number at the time), a highly technical protocol, and it has always been maintained these kinds of issues are best represented at an evidentiary hearing as requested (R139 at 29); a judge isn't expected to be knowledgeable on all domains in existence, and this motion preceded expert testimony. Deciding such a technical issue without proper understanding is rife with potential errors, much like medical cases that require expert consultation. False presumptions shouldn't provide the basis for an order, and to permit so is clear error. <u>Nowata County Gas Co. v. Henry Oil Co.</u> establishes that when an action at law is tried to the court without a jury, and no findings of fact are made, assignments of error cannot be based on the opinion of the court.

Further, on appeal, CTA argues these issues support their counterclaim (20 at 20), which was rejected in a well-reasoned judgment on the merits (R120, R136), making them irrelevant here. Even if these points were relevant, an evidentiary hearing would have exposed their flaws. These misstatements and errors influenced credibility assessments and sanctions, which would not have occurred otherwise, and denied due process via falsities. This also violated FRCP56, dispositive motions require no outstanding genuine questions of material fact.

## THE DISTRICT COURT DIDN'T AFFORD FAIR TREATMENT AND ANALYSIS

On August 10, 2022, the Honorable Nancy Maldonado began serving on the district court and immediately received an additional 287 cases, including this one (R151). The case saw minimal involvement while pending before Judge Maldonado for about eight months. During this period, Judge Maldonado was being confirmed to the 7th Circuit Court of Appeals, where her large caseload, reportedly exceeding 300 cases, was a confirmation topic. Despite this she diligently maintained high standards while processing cases, with her decisions noted as being thoughtful, comprehensive and well-written. On July 11, 2024, Judge Maldonado was confirmed, her caseload redistributed, and this case reassigned to Judge Gettleman (R189). *Less than a month later*, Judge Gettleman adopted the magistrate's Report and Recommendations with minimal analysis and attention (A-002). The district court's detachment was evident, as even the names and background were incorrect, for instance mistakenly referring to prominent figure Michael Haynes, as Todd Haynes (A003), a mish-mash involving a party from another of Judge Gettleman's cases.

In Section IV of its decision, this Court cites two cases emphasizing the trial court's familiarity with proceedings and attorney conduct over that of the reviewing court (39 at 23). However, as the initial brief notes (13 at 20), this case's extraordinary history involved five lower court judges, with the final district judge having *no familiarity with it.* This fact-intensive case spanned thousands of pages, necessitating a more in-depth examination in a fair de novo review of the dispositive

13

motion. Over 50% of newly-reassigned cases from Judges Maldonado to Gettleman were quickly disposed of within the same timeframe. Therefore, claiming the trial court had more familiarity than this Court is erroneous, and deferring to such a distant party is inappropriate.

For her part, the magistrate demonstrated disfavor in several aspects, including both her and CTA violating protective orders, permitting violations of procedure, and permitting harassment without leave.

CTA filed motions intentionally exposing personal data (R91-4) in an effort to promote harassment and didn't immediately request for it to be taken down, instead, it was *partially* redacted, and *both* copies posted so private information was easily cross-compared between them (R93). It took around a week for the magistrate to remove the unredacted copy (R94) and CTA still left only a partially redacted copy which still survives. As if that wasn't bad enough, CTA did it AGAIN with the exact same data exposure and more (R121-1 then AGAIN at R124). CTA further included hyperlinks *placing court exhibits on external storage CTA controlled and could manipulate* in real time (a legitimate concern as they've manipulated items in the record under their control (13 at 8)), in direct violation of the district's and Judge Bucklo's adopted rules of hyperlinking which states explicitly: *"Evidence must be filed of record. A hyperlink to a public website where evidence can be found is not a substitute for filing evidence in support of a motion."* Further, there was absolutely no reason to post deposition *video,* which violates BIPA's standing protective statute (See 740 ILCS 14/10 voiceprint, face geometry and 14/15(e)(2)),

14

given text was readily available. Despite multiple leaves for extension, the filing was incorrect and continually contained deficiencies causing numerous artificial extensions, but was still accepted, despite objections and exceeding the deadline. The magistrate permitted the harassment, excessive filing extensions, and called plaintiff's objections moot (R132) while again permitting violations of protection to stand. All of the items in violation of protection still publicly exist today (E4, R93, R129-1, R129-7, R130); these should be **properly censored, redacted, sealed, or removed**. There's no precedent found for a magistrate being an accessory for harassment[4], but this court has held in <u>Salmeron v. Enterprise Recovery Systems</u> these violations constitute a party's claim's dismissal.

The provenance of the above harassment stems from violation of FRCP30, permitted by the magistrate as well. FRCP30(d) limits depositions to 7 hours, 1 day. CTA exceeded 7 hours their first deposition day alone, nearly doubling to over 13 hours by the end of plaintiff's depositions, excluding breaks. No leave or stipulation is on record, in violation of FRCP30(a) and the deposition, populated with objections of harassment, un-scoped (and objected to) lines of questioning, and comprises the basis of the downstream motions. Courts have rejected granting leave because of harassment and invasive prodding unless the deponent has been hostile or argumentative. The transcripts show this isn't the case (Generally R129-1, R129-7).

---

[4] The magistrate is bound by the Judicial Code of Conduct Canons 3(A)(5) and 3(B)(1) to perform their administrative duties diligently and expediently. Violating these canons enhanced transgression of the protections, promoting harassment.

The magistrate knows to grant leave, but has only done so for others and other cases, just not in reference to plaintiff (see R97 and <u>Promier Products, Inc. v. Orion Capital, LLC</u>, unpublished but same magistrate example). This procedural error was used to multiply the proceedings via fishing expeditions, harass the deponent, confuse deeply technical issues, and fuel conspiratorial theories from fabricated productions.

## CONCLUSION

The court's disregard for procedural boundaries and tendency to stray from the core issues has resulted in rulings that are increasingly disconnected from the original dispute. Despite scope-limiting rulings, the case has inexorably expanded into a labyrinth of technical complexity with decisions founded in fiction. If external issues are deemed relevant, their intricate nature demands a thorough examination at an evidentiary hearing. Given the case's tumultuous history, reliance on misrepresentations, inadequate analysis, and deeply technical nature, the district court's actions warrant remediation and relief as awarded by protections like BIPA, a rehearing, and a de novo review to ensure a fair and comprehensive resolution, or relief via FRCP60(b).

Dated: October 9, 2025

Respectfully submitted,

Christopher G. Pable

*Appellant*

CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 40 and the Circuit Rule 40 because this brief contains exactly 3900 (3900 or less) words, excluding the parts of the brief exempt by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and Circuit Rule 32 and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared with Microsoft Word 2019 1808 in 12-point Century font.

Dated: October 9, 2025

Christopher G. Pable

*Appellant*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 9, 2025, I filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit .

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that some of the participants in the case are not CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days, to the following participants:

| Counsel / Party | Address |
|---|---|
| Taft Stettinius & Hollister LLP/ CTA | 111 East Wacker Dr., Suite 2600 Chicago, Illinois 60601-4208 |
| Amundsen Davis, LLC / Clever Devices | 3815 E. Main Street, Suite A-1 St. Charles, IL 60174 |

Dated: October 9, 2025

Christopher G. Pable

*Appellant*

TABLE OF EXHIBITS

| Exhibit | Description |
|---------|-------------|
| 1 | File-size, cryptographic-hashes, data timeline in phone image |
| 2 | Screenshots of CTA-hosted video-files |

# Exhibit 1



# Exhibit 2

🔒 **PageVault**

| | |
|---|---|
| Document title: | Hightail - Receive |
| Capture URL: | https://spaces.hightail.com/receive/20MhtPLeH9 |
| Page loaded at (UTC): | Tue, 07 Oct 2025 07:55:02 GMT |
| Capture timestamp (UTC): | Tue, 07 Oct 2025 07:55:35 GMT |
| Capture tool: | 10.63.0 |
| Collection server IP: | 54.145.42.72 |
| Browser engine: | Mozilla/5.0 (X11; Linux x86_64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/138.0.7204.97 Safari/537.36 |
| Operating system: | Linux (Node 22.17.0) |
| PDF length: | 2 |
| Capture ID: | 6KkKHA4ftxgXRZmiJmfw3J |
| Display Name: | abhi |

PDF REFERENCE #:     nt8ZEVgJU61uJkqTEsgBGg

E4



Document title: Hightail - Receive
Capture URL: https://spaces.hightail.com/receive/20MhlPLeH9
Capture timestamp (UTC): Tue, 07 Oct 2025 07:55:35 GMT

Page 1 of 1

E5

🔒 **Page Vault**

| | |
|---|---|
| Document title: | Hightail - Receive |
| Capture URL: | https://spaces.hightail.com/receive/vEdzK2hnim |
| Page loaded at (UTC): | Tue, 07 Oct 2025 07:55:40 GMT |
| Capture timestamp (UTC): | Tue, 07 Oct 2025 07:56:03 GMT |
| Capture tool: | 10.63.0 |
| Collection server IP: | 54.145.42.72 |
| Browser engine: | Mozilla/5.0 (X11; Linux x86_64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/138.0.7204.97 Safari/537.36 |
| Operating system: | Linux (Node 22.17.0) |
| PDF length: | 2 |
| Capture ID: | oeGHr9RtVqTGHb4GUcGrSg |
| Display Name: | abhi |

PDF REFERENCE #:     jEbSVs76WSp8ehZKNJ9vEe



E7